[No. S009521. Dec. 7, 1989.]

RICHARD A. PHILLIPS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Geragos & Geragos, Paul J. Geragos and Mark J. Geragos for Petitioner.

Diane C. Yu and Truitt A. Richey, Jr., for Respondent.

OPINION

THE COURT.—We review the unanimous recommendation of the Review Department (the department) of the State Bar Court that petitioner, Richard A. Phillips, be disbarred from the practice of law in California.

Petitioner asks this court to reject the department's recommendation. He contends that the department's conclusions are not supported by the law, that the department ignored mitigating circumstances, and that the recommendation is harsh and unfair in light of those mitigating circumstances.

After considering the record and arguments of petitioner and the State Bar, we adopt the department's recommendation.

## I. FACTS

Petitioner was admitted to the State Bar of California in 1971. From that time until 1978 he practiced as a deputy district attorney for Los Angeles County. Petitioner left the district attorney's office in 1978 and joined a small firm in West Covina, California. When that firm dissolved he began a solo practice. Petitioner is currently an associate of a small Los Angeles law firm. He has a record of five prior disciplinary proceedings from 1979 until the commencement of this action.

The present consolidated disciplinary proceeding focuses on a stipulation entered into by petitioner, his attorney and the State Bar as to facts and

culpability in three client matters (State Bar Court proceedings Nos. 85-0-216 LA, 85-0-13 LA, and 86-0-136 LA), and upon petitioner's failure to comply with this court's orders in three separate proceedings (State Bar Court proceedings Nos. 85-N-18993, 86-N-19558, and 86-P-19559).

### A. *Petitioner's Culpability in the Present Original State Bar Proceedings*

### 1. *The Reck Matters*

In November 1980, Melvin E. Reck hired petitioner to represent him in a personal injury matter on a contingent fee basis. Petitioner filed a complaint, but failed to provide any further legal services. In June 1981, Reck retained petitioner to represent his son in a personal injury case. Petitioner told Reck that he had filed a complaint on behalf of the son, when, in fact, he had performed none of the legal services for which he was retained.

Petitioner also misrepresented to Reck that he was entitled to practice law in California. In fact, petitioner was under actual suspension by this court for failure to pay State Bar membership dues. He later failed to respond to any of Reck's telephone calls and was subsequently discharged from both cases by Reck in March of 1982. Reck hired new attorneys, but petitioner refused to release the case files to Reck's new attorneys.

Petitioner stipulated to having wilfully violated his oath and duties as an attorney in the Reck matters under California Business and Professions Code sections 6068, 6103, 6106, 6126, 6127, and Rules of Professional Conduct, former rules 2-111(A)(2), 3-101(B), and 6-101(2).[1]

### 2. *The Mitchell Matter*

In June of 1983, petitioner was appointed to represent an indigent defendant, Boise Mitchell, in a criminal matter in Los Angeles Superior Court. Mitchell was convicted and sentenced to state prison. Mitchell asked petitioner to file an appeal on his behalf and petitioner agreed. Petitioner failed,

---

[1] All further statutory references are to the Business and Professions Code. New Rules of Professional Conduct became operative on May 27, 1989; all further references to rules are to the former Rules of Professional Conduct of the State Bar of California, unless otherwise indicated.

Former rule 6-101(2), in effect at the time petitioner entered into the stipulation, was amended on October 21, 1983. Prior to amendment, former rule 6-101(2) read as follows: "A member of the State Bar shall not willfully or habitually . . . (2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish . . . the purpose for which he is employed."

The 1983 amendment to former rule 6-101 is of no consequence to the present matter.

however, to file a notice of appeal, or to provide any legal services to Mitchell; petitioner did not respond to any of Mitchell's letters.

Petitioner stipulated to having wilfully violated his oath and duties as an attorney in the Mitchell matter under sections 6067, 6068, 6103, and former rules 6-101(A)(2), 2-111(A), and former rule 6-101(2).

### 3. *The Aframian Matter*

In 1983, petitioner was appointed to represent an indigent defendant, Behrouz Aframian, in several criminal matters in Los Angeles Superior Court. Petitioner appeared several times in court on behalf of Aframian through December of 1983. Petitioner failed to appear in any subsequent court proceeding on behalf of Aframian, and could not be contacted by court personnel. The court appointed new counsel to represent Aframian on January 6, 1984.

Petitioner stipulated to having wilfully violated his oath and duties as an attorney in the Aframian matter under sections 6067, 6068, 6103, and former rules 6-101(A)(2) and 6-101(2).

### B. *Petitioner's Failure to Comply With This Court's Orders*

### 1. *April 13, 1984, Proceeding—California Rules of Court, Rule 955*

On April 13, 1984, we ordered petitioner placed on probation for failure to provide attorney services in four client matters. (Bar Misc. No. 4720.) The terms of probation included that petitioner be suspended for two years, stayed, and that he pass the Professional Responsibility Exam (PRE). When petitioner failed to pass the PRE within the prescribed time, the State Bar commenced revocation proceedings and eventually recommended revocation of probation.

On February 13, 1986, we accepted the State Bar's recommendation of actual suspension for two years. We ordered petitioner to comply with California Rules of Court, rule 955(a) and (c), requiring that he notify all clients, cocounsel and adverse counsel in pending litigation of his order of suspension, and file an affidavit as proof of compliance within the time limit provided.

Petitioner admits that he received the order and State Bar notices, but nevertheless failed to comply. On June 5, 1986, we referred this matter to the State Bar for hearing and report as to whether petitioner wilfully failed to comply and for recommendation as to discipline. The State Bar conclud-

ed that petitioner was fully capable of comprehending and obeying the order and that he wilfully failed to comply with California Rules of Court, rule 955 (hereafter rule 955).

In August of 1986, petitioner passed the PRE, and on September 30, 1986, this court vacated his actual suspension.

2. *June 15, 1985, Proceeding—Rule 955*

On June 15, 1985, this court suspended petitioner for five years for failure to provide attorney services to two clients, Wanda Morris and Robert Pollock, both of whom retained him by payment in advance. (Bar Misc. No. 4885.) Petitioner was under actual suspension for failure to pay State Bar dues when he undertook both matters and failed to return the fee advanced by Morris.

We ordered the five-year suspension stayed on conditions of probation which included that petitioner be subject to actual suspension for one year, comply with rule 955, pass the PRE, refund unearned fees to his clients, meet with a probation monitor, and be evaluated by a psychiatrist or psychologist.

Petitioner failed to file an affidavit in compliance with rule 955(c) within the time prescribed. On November 26, 1985, we issued an order referring the matter of noncompliance to the State Bar for hearing and report as to whether petitioner wilfully failed to comply and, if so, for recommendation as to discipline.

The State Bar found, and petitioner testified, that he received the court order and numerous State Bar notices, and either read or ignored them. It also found that petitioner was capable of comprehending his professional and social responsibilities from 1985 to the time of the hearing. On June 17, 1987, petitioner filed the declaration required by rule 955(c) after commencement of the State Bar hearings. The State Bar concluded that petitioner wilfully failed to comply with rule 955.

3. *June 15, 1985, Proceeding—Probation Monitor*

In the same June 15, 1985, proceeding, this court also required as a condition of probation that petitioner meet with his appointed probation monitor to discuss the terms and conditions of his probation, and to arrange for his psychiatric evaluation. Petitioner failed to meet with his assigned probation monitor within the time prescribed and, on February 27, 1986,

the State Bar issued a notice to show cause why it should not recommend that the stay be set aside.

Petitioner met with his probation monitor for the designation of psychiatric evaluation only after the notice to show cause was issued. The State Bar Court found that petitioner failed to meet with his probation monitor within the prescribed time. It concluded that petitioner substantially failed to meet the required probation conditions.

### C. *Prior Discipline*

Petitioner has a record of five instances of misconduct for which he was disciplined. He was suspended for failure to pay State Bar dues from December 27, 1979, through March 3, 1982, and from June 27, 1983, through February 16, 1984. He was publicly reproved in June of 1982 for failure to provide attorney services and refusing to comply with an accounting for an advanced fee. (Bar Misc. No. 3453.) He was suspended for two years, stayed, on April 13, 1984, for failure to provide attorney services in four client matters. He was again suspended on June 15, 1985, for five years for failure to provide attorney services to two clients. Petitioner was suspended again for another five years, stayed, in January of 1986 for failure to provide attorney services for client Warren Busch. At the time the services were to be performed, petitioner was under actual suspension for nonpayment of State Bar fees, and petitioner never returned the fee Busch advanced him.[2]

### D. *State Bar Proceedings*

In the present consolidated proceeding, the hearing panel, having determined that petitioner wilfully violated his oath and duties as an attorney in three client matters, and three times violated the conditions of probation, limited the hearing entirely to issues of mitigation, aggravation and degree of discipline.

The hearing panel considered petitioner's testimony that the reason for his failure to follow this court's orders and for the violations of his oath and duties as an attorney was that he suffered from a severe passive/aggressive personality disorder. Petitioner's expert witness and psychiatrist, Dr. Vicary, testified that petitioner has two major mental problems: the passive/aggressive personality disorder and depression. He described the personality disorder as one characterized by a "pattern of forgetting,

---

[2] In the January 1986 proceeding, the suspension was stayed on conditions of probation; probation was to be concurrent with probation ordered in the June 15, 1985, proceeding. (Bar Misc. No. 5014.)

obstructing, failure to meet one's obligations, . . . not for a rational purpose but to ventilate an underlying reservoir of frustration." Dr. Vicary testified that the personality disorder is exacerbated by pressure and demands, and the more a person who is suffering from the disorder is pushed to perform, the more he will fight against authority. He also testified, however, that petitioner was fully capable of comprehending his professional and social responsibilities from 1985 to the time of the hearing.[3] He said that petitioner would perform better in a structured environment such as a large law firm, and that he had made progress in his treatment with another psychiatrist.[4] Finally, Dr. Vicary testified that although with treatment petitioner may control the disorder, ultimately it is incurable.

The hearing panel did not find petitioner's personality disorder mitigating because he failed to prove by clear and convincing evidence that he no longer suffers from it. The hearing panel concluded that the disorder renders petitioner a danger to the public in that under certain circumstances he would likely fail to discharge his duties as an attorney.

The hearing panel, however, found the following additional circumstances to be mitigating: petitioner has taken steps demonstrating remorse and recognition of some of his wrongdoing; colleagues in the legal community testified that petitioner has good character; and all of the events referred to in the current matters occurred within the same time frame as the conduct for which petitioner was previously disciplined.

The hearing panel found the following circumstances as aggravating: petitioner has a record of five prior disciplinary proceedings; his current misconduct evidences multiple acts of wrongdoing or demonstrates a pattern of misconduct; petitioner failed to make restitution to a client; and petitioner's current misconduct caused significant harm to clients, the public, and the administration of justice.

The hearing panel found that the aggravating circumstances, particularly the extreme record of misconduct, outweighed the mitigating circumstances

---

[3] Petitioner testified that he was aware of the numerous letters he received from the State Bar during 1985 and 1986, which contained information about disciplinary matters, and that he either opened and read the letters or placed them on a shelf or in a paper bag.

He also stated that he was aware that he was required to comply with certain conditions of probation: "I know that I understood the fact that I had to give notification with respect to any pending cases and so forth, but since I didn't have any at that time, it's just very difficult for me to say what my state of mind was, whether I thought that that was compliance with rule 955 or whether something more was required of me . . . I knew that I was supposed to have taken the professional responsibility examination within a certain time frame, and I knew that if I didn't, I realized if I didn't do that, I would be suspended."

[4] Dr. Vicary also stated, however, that "if he were in a private practice . . . , [and that] if the office manager or a senior partner of the large firm were to push" petitioner, petitioner would continue to have problems.

and warranted a greater degree of sanction than suspension; the hearing panel recommended disbarment. The review department adopted the findings of fact and conclusions of law of the hearing panel, and also recom-' mended disbarment.

## II. DISCUSSION

■ While we give great weight to both the department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), we must exercise independent judgment in determining the appropriate discipline to be imposed in any given case. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753].) There is no fixed formula guiding our determination of the appropriate discipline. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 14 [206 Cal.Rptr. 373, 686 P.2d 1177].) "Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys." (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82], internal quotations and citation omitted.)

■ Petitioner argues that he necessarily lacked the requisite intent to commit "wilful" misconduct because he suffered from a personality disorder during the time he committed the misconduct.

We have defined "wilful" under rule 955 as " 'simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.' " (*Durbin* v. *State Bar* (1979) 23 Cal.3d 461, 467 [152 Cal.Rptr. 749, 590 P.2d 876], quoting Pen. Code, § 7, subd. 1.) "Moreover, 'wilfulness' under rule 955 does not require bad faith or actual knowledge of the provision which is violated. [Citation.]" (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1186 [248 Cal.Rptr. 830, 756 P.2d 217].) Wilful violation of the Rules of Professional Conduct is established by a demonstration that the attorney " 'acted or omitted to act purposely, that is, that he knew what he was doing or not doing and that he intended either to commit the act or to abstain from committing it. [Citations.]' " (*Millsberg* v. *State Bar* (1971) 6 Cal.3d 65, 74 [98 Cal.Rptr. 223, 490 P.2d 543]; see *Durbin* v. *State Bar,*

*supra,* 23 Cal.3d 461, 467; *Beery* v. *State Bar* (1987) 43 Cal.3d 802, 815 [239 Cal.Rptr. 121, 739 P.2d 1289].)[5]

The evidence before us indicates that petitioner knew what he was doing or not doing and that he intended his acts or omissions. Petitioner testified, as detailed above, that he was aware that he was required to comply with certain conditions of probation. Dr. Vicary, petitioner's own expert witness and psychiatrist, testified that petitioner was capable of comprehending his professional and social responsibilities at the time he violated his conditions of probation. And the hearing panel referee found that petitioner was aware of his responsibilities.

■ ■■■■ Furthermore, petitioner sabotaged his argument when he entered into a stipulation with the State Bar that he was thrice in "wilful violation" of his oath and duties as an attorney under sections 6067, 6068, 6103, 6106, and 6126, and former rules 2-111(A)(2), 3-101(B), and 6-101(2) in the separate client matters.[6] Petitioner does not explain how he could be capable of wilfully violating sections of the Business and Professions Code and the Rules for Professional Conduct, and at the same time be incapable of wilfully violating the conditions of his probation (i.e., failure to comply with rule 955 and failure to take and pass the Professional Responsibility Examination). He does not attempt to argue that he suffered from a greater degree of mental illness when he did not comply with the conditions of probation than when he wilfully violated the Business and Professions Code and the Rules of Professional Conduct. We can only presume, absent an explanation to the contrary, that he possessed the same knowledge of and

---

[5] We may disbar or suspend an attorney for wilful violation of the Rules of Professional Conduct. (§ 6077.) We may disbar, suspend or cite for contempt an attorney who wilfully fails to comply with the provisions of rule 955. Rule 955(e) provides in relevant part: "A suspended attorney's wilful failure to comply with the provisions of this rule constitutes a cause for his disbarment or suspension and for revocation of any probation then pending. Additionally, the Supreme Court may punish such wilful failure by exercise of its contempt power."

[6] We could without question disbar petitioner based on the stipulation alone. Standard 2.6 of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) provides for disbarment or suspension of an attorney who has violated sections of the Business and Professions Code, including those sections petitioner violated, and section 6077 calls for the disbarment or suspension of an attorney who has wilfully violated the Rules of Professional Conduct. Further, standard 2.4(a) provides for disbarment of an attorney who has demonstrated "a pattern of wilfully failing to perform services demonstrating the member's abandonment" of client matters. Indeed, we have consistently held that a pattern of disregard of clients' interests justifies disbarment or suspension. (See, e.g., *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 342 [211 Cal.Rptr. 525, 695 P.2d 1066]; *Ballard* v. *State Bar* (1983) 35 Cal.3d 274 [197 Cal.Rptr. 556, 673 P.2d 226]; *McMorris* v. *State Bar* (1981) 29 Cal.3d 96 [171 Cal.Rptr. 829, 623 P.2d 781].)

We are guided but not bound by these standards. (See *Greenbaum* v. *State Bar, supra,* 43 Cal.3d 543.) Further references to standards are to the Standards for Attorney Sanctions for Professional Misconduct.

intent to act or abstain from acting during the time period in which he violated the code and rules, and the time period in which he failed to comply with the conditions of probation.

■ We do not believe, based on the testimony of petitioner and Dr. Vicary, and petitioner's stipulation, that petitioner's mental disorder was so severe as to render him unable to act or abstain from acting with knowledge and intent to do so.[7] Hence we conclude that he wilfully violated his conditions of probation as ordered by this court.

Petitioner also contends that the department failed to consider as mitigating factors both that he suffered from a personality disorder and that all of the misconduct occurred within the same time period. ■ As to the personality disorder, petitioner is correct that mental disorder may serve as a mitigating factor; but this is true only if one establishes through clear and convincing evidence that he no longer suffers from the disorder. (Std. 1.2(e)(iv); see also *Ballard* v. *State Bar, supra,* 35 Cal.3d at p. 289.)[8]

Dr. Vicary testified that petitioner has improved during treatment, but also stated that petitioner's disorder is incurable and may only be controlled by continuous lifelong psychotherapy and by a highly structured environment free of client interaction. Even in that kind of environment, Dr. Vicary cautioned that if petitioner was pressed by a partner or an office manager to complete an assignment, he might respond irrationally and in a self-destructive manner. We certainly cannot grant petitioner a limited right to practice law in certain kinds of stress-free environments. In any case, because petitioner has not convinced this court that he no longer suffers from the disorder, the department properly did not consider it as a mitigating factor.

As to petitioner's argument that the department did not properly consider as mitigating the fact that all of the misconduct occurred within the same

---

[7] In any event, even if we were to find that petitioner's mental disorder was so severe that he could not have had knowledge of or intent to act or abstain from acting, our principal concern would continue to be the protection of the public, the bench and the bar, as well as the maintenance of high professional standards. (See *Chefsky* v. *State Bar, supra,* 36 Cal.3d 116, 132.) We would then take whatever steps might be necessary in furtherance of that concern.

[8] Petitioner cites *Frazer* v. *State Bar* (1987) 43 Cal.3d 564 [238 Cal.Rptr. 54, 737 P.2d 1338], in which we held that disbarment of an attorney who suffered from depression and agoraphobia at the time the misconduct occurred was too harsh. (*Id.* at p. 577.) There we considered the depression and agoraphobia mitigating factors, but only because petitioner had produced sufficient evidence of his rehabilitation and ability to control his conduct. (*Id.* at pp. 576-578; see *Ballard* v. *State Bar, supra,* 35 Cal.3d 274, 289 ["An attorney's psychiatric condition [may be] considered in determining whether lesser discipline than disbarment is appropriate, but only if successful therapeutic rehabilitation or a strong prognosis for future rehabilitation [has been] established."].)

time period, he is mistaken. It did, and adopted the hearing panel's finding, as a mitigating factor, that "[s]ubstantially, all of the events . . . in the current matters occurred within the same time frame as [petitioner's] conduct for which he has previously been disciplined." In *Frazer, supra,* 43 Cal.3d 564, 578, we held that where all misconduct takes place during a limited time period, we may *consider* it as mitigating. Such circumstance, of course, is not determinative. Here, the department properly took the time frame of petitioner's misconduct into account as one factor in its overall assessment of petitioner's case.

■ In addition to the above mitigating factors, the hearing panel found clear and convincing evidence of an extraordinary demonstration of good character of the petitioner, attested to by significant references in the legal community who were aware of the full or at least a substantial extent of petitioner's misconduct. (Std. 1.2(e)(vi).)

Also, based on petitioner's testimony before the hearing panel, and the hearing panel's relevant finding, we recognize as mitigating that petitioner demonstrated remorse and recognition of his wrongdoing. (Std. 1.2(e)(vii).) There is evidence in this case of objective steps promptly taken by the petitioner, designed to atone for some of the consequences of his misconduct.

We considered also the aggravating factors. First, petitioner's misconduct reflects a pattern of misconduct demonstrating habitual disregard for the interests of his clients. Petitioner repeatedly failed to perform services for his clients, refused to communicate with them, and refused to return files to a client's new attorneys. Such a pattern of misconduct is an aggravating factor under standard 1.2(b)(ii).

Second, as the department found, petitioner significantly harmed his clients by failing to make restitution of unearned fees, and impeded the administration of justice by failing to comply with the terms of his probation. These harms constitute an aggravating factor under standard 1.2(b)(iv).

Lastly, petitioner has a significant prior record of discipline. Petitioner's shameful record of five prior disciplinary proceedings is an aggravating factor under standard 1.2(b)(i).

The net effect of the aggravating and mitigating factors demonstrates that the aggravating circumstances, particularly the prior record of discipline, require disbarment to ensure the protection of the public and the preservation of confidence in the legal profession.

Having considered petitioner's wilful violations of the Business and Professions Code, the Rules for Professional Conduct, and the conditions of his probation as ordered by this court, as well as all the other sad circumstances of this case, we are not persuaded that he is currently fit to practice law. Petitioner's misconduct and his prior record of discipline shows not a few aberrant or uncharacteristic acts, but rather a continuing course of serious professional misconduct extending over a number of years. (See *Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 576 [119 Cal.Rptr. 335, 531 P.2d 1119].) This course of conduct, as well as petitioner's continuing personality disorder, pose a substantial risk of future harm to the public and the profession. (See *Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 131 [192 Cal.Rptr. 866, 665 P.2d 956].) We are not convinced that merely suspending petitioner again will adequately protect the public, the courts and the legal profession, preserve public confidence in the legal profession, and maintain high professional standards by attorneys. (Std. 1.3.)

### III. DISPOSITION

We order petitioner Richard A. Phillips disbarred from the practice of law in this state. We further order petitioner to comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order will be effective upon finality of this opinion in this court. (See Cal. Rules of Court, rule 24(a).)