[No. S013102. Dec. 20, 1990.]

FRANK MORRISON HARFORD, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Frank Morrison Harford, in pro. per., and Richard L. Garrigues for Petitioner.

Diane C. Yu, Richard J. Zanassi and Susan Leventhal for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court (review department) has recommended that petitioner Frank Morrison Harford be disbarred from the practice of law in this state. The recommendation is based on findings of culpability in six client matters. Petitioner's misconduct included misappropriation of client funds, misrepresentations to clients about their cases, failure to perform services, and failure to return unearned fees. In four of the matters, petitioner's acts were found to involve moral turpitude.

Petitioner blames alcohol and drug use for his misconduct, and he entreats us to consider his subsequent reformation to a life of sobriety and virtue. In view of the seriousness of petitioner's misconduct, we shall impose the recommended discipline of disbarment.

## FACTS

Petitioner was admitted to the practice of law in California in December 1977. He has been previously disciplined by private reproval following a misdemeanor conviction for inflicting corporal injury on a spouse (Pen. Code, § 273.5). Petitioner committed the offense in October 1986 by striking his wife during an argument; he was inebriated at the time.

In May 1988, the State Bar issued a notice to show cause charging petitioner with misconduct in six client matters. Petitioner eventually stipulated to the facts establishing misconduct in three of these matters; the remaining matters were set for a contested hearing before a single-referee hearing panel. The hearing panel found misconduct in all matters and recommended disbarment. By a 12-1 vote, the review department adopted the hearing panel's findings of fact and conclusions of law and also its disciplinary recommendation.

*Gayton Matter*

James Gayton retained petitioner in January 1984 to represent him in a personal injury action. Petitioner settled the action in April 1984 for $12,000. Petitioner negotiated the settlement draft by means of forgery; without depositing the funds in a trust account, he spent them for his own use and benefit. Petitioner repeatedly told Gayton the action was pending and continued to discuss settlement figures with him long after it had been settled. When Gayton learned of the settlement many months later and confronted petitioner with the facts, petitioner became very abusive and threatened Gayton with physical harm.[1]

Petitioner's conduct in misappropriating Gayton's settlement proceeds, deceiving Gayton regarding the existence of the settlement, and misrepresenting the status of the action violated former rule 8-101 (see now, rule 4-100) of the Rules of Professional Conduct[2] and involved moral turpitude within the meaning of section 6106[3] of the Business and Professions Code.

---

[1] Petitioner has attempted to justify his actions by claiming that Gayton owed him money for services petitioner performed for Gayton's son both before and after he received the settlement money. The hearing panel found that petitioner did perform services for Gayton's son for which petitioner was not paid but it declined to determine whether Gayton was indebted to petitioner for these services. It concluded that petitioner's conduct was totally inappropriate regardless of the existence of the alleged debt. We agree.

[2] All references to rules are to the State Bar Rules of Professional Conduct unless otherwise indicated. The present rules took effect on May 27, 1989, after the misconduct involved here. References to former rules are to those in effect when petitioner's conduct occurred.

Former rule 8-101, as here relevant, required an attorney to promptly notify a client of the receipt of client funds, deposit client funds in an account separate from the attorney's own

*Triola Matter*

Carl Triola hired petitioner in May 1985 to represent him in a personal injury matter. Petitioner settled the matter in November 1985 for $7,500. Without Triola's knowledge or consent, petitioner negotiated the settlement check by forgery; without depositing the funds in a trust account, he misappropriated all or a portion of the funds for his own use and benefit. Petitioner continued to tell Triola that the case was pending. Triola discovered the settlement in July 1986. In September 1986, petitioner gave Triola two checks, each for $2,500, drawn on petitioner's client trust account. Triola made a number of attempts to negotiate the checks but each time they were dishonored for insufficient funds in petitioner's trust account. Petitioner knew or should have known when he wrote the checks that the trust account contained insufficient funds to cover them. Triola never received any part of the $7,500 settlement.

As in the Gayton matter, petitioner's conduct violated former rule 8-101 and involved moral turpitude within the meaning of section 6106.

*Newman Matter*

Ann Newman retained petitioner in March 1985 to represent her in a personal injury matter. In February 1986, petitioner settled the case for $13,000. Without Newman's knowledge or consent, petitioner negotiated the settlement check by forgery and diverted all the money to his own use. For many months Newman made desperate attempts to contact petitioner, all to no avail.

As in the Gayton and Triola matters, petitioner's conduct violated former rule 8-101 and involved moral turpitude within the meaning of section 6106. His conduct in failing to communicate with his client violated former rule 6-101(A)(2) (see now, rule 3-500).

*Lovato Matter*

Donna Lovato retained petitioner in July 1985 to represent her in a marital dissolution proceeding. She paid petitioner $945 and he agreed to

funds, maintain complete records of client funds in the attorney's possession and render appropriate accounts to the client, and promptly pay the client on request all funds the client was entitled to receive.

[3] All further statutory references are to the Business and Professions Code unless otherwise indicated. Section 6106 provides, in relevant part, that the commission of any act involving moral turpitude, dishonesty, or corruption constitutes cause for disbarment or suspension.

handle the entire case for that amount. Petitioner did a great deal of work on the case but eventually declined to perform further services unless paid more money. In early 1986, Lovato found it difficult to communicate with petitioner. In March 1986, petitioner told her he had filed on her behalf a motion for entry of default judgment. This statement was false.

Lovato eventually retained another attorney who completed the action for $2,000. Lovato asked petitioner to refund unearned fees but he failed to do so. Lovato then sued petitioner and obtained a judgment for $1,120 (representing, apparently, a reimbursement of the $945 she had paid petitioner, plus interest and costs), which petitioner has never paid.

In this matter, petitioner violated former rule 2-111 (see now, rule 3-700) by withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to his client and by not refunding unearned fees. He violated former rule 6-101(A)(2) by failing to communicate with his client. By deceiving his client, he committed an act of moral turpitude within the meaning of section 6106.

*Manos Matter*

Gerald Manos hired petitioner in September 1986 to recover claimed damages to Manos's tour bus. Manos paid petitioner $500 against petitioner's contingent share of any recovery. Petitioner failed to perform any services for Manos; after December 1986, petitioner failed to respond to Manos's repeated attempts to communicate with him, including a written demand in January 1987 that petitioner return the $500 paid to him. Petitioner did not return any part of the advance fee, nor did he return important documents Manos had given him. Petitioner's inaction caused grave hardship to Manos and his wife.

In this matter, petitioner violated former rules 2-111 and 6-101(A)(2) by failing to refund unearned fees, failing to complete the services for which he was hired, failing to communicate with his client, and failing to return the client's file.

*Rivera/Martinez Matter*

Celia Rivera paid petitioner $2,000 in November 1986 to represent Douglas Martinez, who had been arrested by the local police. When he learned that Martinez had been transferred to federal custody, petitioner demanded more money, claiming he had accepted the case on the understanding that it involved only a state prosecution. Rivera asked for her money back, but petitioner was unable to return the money because he had spent it. Petitioner never performed any useful service for Martinez. Rivera initiated fee

arbitration proceedings with the Los Angeles County Bar Association and received an award in her favor, which she later reduced to a judgment. Petitioner has not satisfied the judgment.

Petitioner violated former rule 2-111(A)(3) in this matter by failing to return unearned fees.

*Circumstances in Mitigation and Aggravation*

Petitioner testified that he began drinking alcohol in high school, and that his father was an alcoholic. After being drafted, petitioner enlisted in the United States Army, attended Officer Candidate School, and received a commission. He remained in the military for five years, during which time he drank heavily every day with no adverse effect on his performance. After being honorably discharged from the military, he completed his undergraduate and legal education while working full-time. During this period he began to use illegal drugs to stay awake, but he limited his alcohol use to weekends. Petitioner established himself as a sole practitioner after being admitted to the bar.

Petitioner has been married three times, each marriage ending in divorce. Petitioner testified that he began to have problems in the third marriage in 1982. He began drinking heavily every day and also began using cocaine. He was depressed and did not know how to solve his problems.

Petitioner began his recovery from alcoholism and drug dependency in October 1986. As mentioned previously, petitioner returned home late one night and struck his wife during an argument. He was arrested and spent the night in jail. After his release, he went to Alcoholics Anonymous and has not consumed drugs or alcohol since that day. Petitioner largely abandoned the practice of law and worked primarily as a painter until approximately five months before the disciplinary hearing, when he accepted a full-time position in a law firm. Various witnesses, including two physicians and two fellow members of Alcoholics Anonymous, testified that petitioner has made solid progress in overcoming the effects of alcoholism.

Based on this evidence, the hearing panel made these findings in mitigation: At the time of the misconduct, petitioner was "locked in the grip of alcoholism with the usual deleterious effects upon his judgment and capacity to perform his professional duties"; at the time of the hearing petitioner had been an active participant in an alcoholic rehabilitation program for more than two years, during which time he had remained sober and had tried to reform his life and compensate those injured by his wrongdoing;

and petitioner "sincerely regrets the harm that he has done and the knowledge of his betrayal of trust is a constant self-administered recrimination."

The hearing panel also made these findings regarding potential and actual factors in aggravation: Petitioner's record of prior discipline for assaulting his wife is "irrelevant to this [proceeding] except as further evidence of his general dissolution"; his misconduct was "permeated with concealment and dishonesty . . . in that he repeatedly lied to his clients"; he "committed multiple acts of wrongdoing"; and he "did not act expeditiously to atone for the consequences of his misconduct."

The hearing panel's findings in aggravation and mitigation were adopted without change by the review department.

### DISCUSSION

■ We discipline errant attorneys to protect the public, to preserve public confidence in the legal profession, and to maintain high professional standards. (*Phillips* v. *State Bar* (1989) 49 Cal.3d 944, 952 [264 Cal.Rptr. 346, 782 P.2d 587].) To determine what discipline, if any, is appropriate in a given case, we conduct an independent review of the record and exercise our own judgment, but we give great weight to the review department's recommendation. (*Slaten* v. *State Bar* (1988) 46 Cal.3d 48, 63 [249 Cal.Rptr. 289, 757 P.2d 1].) To promote consistency and reduce disparity in attorney discipline, we also give great weight to the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct; all further references to standards are to these provisions). (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 933, fn. 5 [258 Cal.Rptr. 235, 771 P.2d 1323]; *Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1087 [245 Cal.Rptr. 404, 751 P.2d 463].) When the review department's recommendation is consistent with the standards, we will generally follow the recommendation unless we entertain grave doubts about its propriety. (*In re Naney* (1990) 51 Cal.3d 186, 190 [270 Cal.Rptr. 848, 793 P.2d 54]; *In re Billings* (1990) 50 Cal.3d 358, 368 [267 Cal.Rptr. 319, 787 P.2d 617].)

■ Standard 2.2(a) provides that disbarment is the normal discipline for an attorney who has willfully misappropriated entrusted funds, and that a lesser discipline shall be imposed only if the amount of the funds misappropriated is insignificantly small or if the "most compelling mitigating circumstances clearly predominate," in which case the attorney shall be actually suspended for at least one year. We have affirmed the rule enunciated in this standard that an attorney who has misappropriated client funds will generally be disbarred in the absence of strong extenuating circumstances.

(*Chang* v. *State Bar* (1989) 49 Cal.3d 114, 128 [260 Cal.Rptr. 280, 775 P.2d 1049].)

Petitioner contends that his rehabilitation from alcoholism constitutes evidence of compelling mitigating circumstances warranting the imposition of discipline less severe than disbarment. ■ For an attorney's rehabilitation from alcoholism or other substance abuse to be entitled to *any* significant mitigating weight, the attorney must establish these facts: (1) the abuse was addictive in nature, (2) the abuse causally contributed to the misconduct, and (3) the attorney has undergone a meaningful and sustained period of rehabilitation. (*In re Billings, supra,* 50 Cal.3d 358, 367.) Clear proof of all three elements, moreover, does not necessarily provide a sufficient basis for rejecting a disbarment recommendation. Although we have declined on occasion to disbar attorneys who misappropriated client funds when the attorney has carried the heavy burden of establishing that the misconduct was caused in significant measure by substance abuse from which the attorney has made substantial progress towards recovery (e.g., *Howard* v. *State Bar* (1990) 51 Cal.3d 215 [270 Cal.Rptr. 856, 793 P.2d 62]; *Baker* v. *State Bar* (1989) 49 Cal.3d 804 [263 Cal.Rptr. 798, 781 P.2d 1344]), in other cases we have disbarred despite such evidence, when the nature of the misconduct or other factors in the record persuaded us that a lesser discipline would not suffice (e.g., *In re Demergian* (1989) 48 Cal.3d 284 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658 [238 Cal.Rptr. 394, 738 P.2d 740]). In determining the appropriate discipline in this case, therefore, we must consider not only whether petitioner's evidence of rehabilitation satisfies the three-part test, but also whether the evidence is sufficiently mitigating, in light of the particular facts of the misconduct and other relevant circumstances, to warrant a discipline less than disbarment.

■ In this case, evidence that petitioner's abuse of alcohol and cocaine causally contributed to the misconduct is weak. Although the hearing panel found that petitioner was "locked in the grip" of alcoholism throughout the period of the misconduct, in fact the misconduct in the Manos and Rivera/Martinez matters (which did not include misappropriation) occurred largely, if not entirely, after petitioner had ceased to use alcohol and illegal drugs. As to these two matters, the evidence that alcoholism or drug addiction were causative factors is virtually nonexistent. Further, although the hearing panel found that petitioner's judgment and ability to perform legal services were impaired by substance abuse throughout the period during which he misappropriated his clients' funds, there is no persuasive evidence that petitioner was actually intoxicated when he committed any of the acts of misappropriation, nor is there evidence that petitioner stole his clients' funds because of a desperate or compulsive need for funds with

which to purchase drugs or alcohol. In brief, proof of causation rests largely on the questionable inference that because petitioner's judgment was generally impaired by alcohol throughout this period of time, he probably would not have committed the misappropriations had his judgment not been so impaired. Whether petitioner has satisfied the three-part test for rehabilitation evidence is questionable, therefore, but we find it unnecessary to make a final determination on this issue. Even assuming that petitioner's rehabilitation is entitled to significant mitigating weight, we nonetheless conclude that disbarment is the appropriate discipline in this case.

As the hearing panel found, petitioner has made some efforts to reimburse his clients for misappropriated funds and unearned fees, but in each instance these efforts were untimely. In the Triola, Newman, Manos, and Rivera/Martinez[4] matters, petitioner made no effort to reimburse his clients until 1988, long after the date he began his recovery from alcoholism and long after he knew he was the subject of a State Bar investigation. Restitution made after disciplinary proceedings have commenced is entitled to little or no weight in mitigation. (*Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 658 [247 Cal.Rptr. 608, 754 P.2d 1104].) In the Gayton and Lovato matters, petitioner made no restitution to his clients.

Petitioner's misdeeds did not consist solely of misappropriation. Petitioner also failed to perform legal services, failed to return unearned fees, and repeatedly failed to communicate with his clients. And, as the hearing panel found, petitioner's misconduct "was permeated with concealment and dishonesty." This finding is fully supported by the record: petitioner forged his clients' names on settlement checks, lied to his clients about the status of their cases, and issued checks when he knew or should have known there were insufficient funds in his trust account to cover the checks. Because the public's regard for the legal profession depends to an extraordinary degree on the public's trust in the integrity of attorneys, disbarment is generally the appropriate discipline for an attorney whose conduct demonstrates a pattern of dishonesty.

---

[4] Petitioner testified that he mailed two $500 checks to Celia Rivera during the two months preceding the hearing in this matter. Rivera, in her testimony, denied receiving them. In his brief before this court, petitioner maintains that Rivera's testimony was untruthful, and he has attached as an exhibit to his brief a copy of a canceled check purportedly bearing her signature.

We are reluctant to consider evidence not presented at the hearing. (*In re Rivas* (1989) 49 Cal.3d 794, 801 [263 Cal.Rptr. 654, 781 P.2d 946].) The present case well illustrates the wisdom of this policy. First, we have no means of determining whether the signature is genuine. Second, as petitioner observes, notations on the back of the check indicate it was negotiated only in October 1989, some 11 months after the hearing. Thus it appears possible, and indeed likely, that Rivera had not received the check at the time of her testimony. In any event, as noted in the text, restitution made after disciplinary proceedings have commenced is entitled to little or no weight in mitigation.

Petitioner's misconduct was egregious and consisted of numerous separate improper acts, many of which manifested dishonesty. His efforts to rehabilitate himself from the effects of alcohol and drug abuse, though commendable, are insufficient to cause us to entertain grave doubts regarding the propriety of the review department's recommendation of disbarment. Having considered the entire record, we conclude that petitioner has not met his burden of establishing that the recommendation is erroneous.[5]

## DISPOSITION

Frank Morrison Harford is disbarred from the practice of law and his name is stricken from the roll of attorneys. He is ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. Failure to comply with rule 955 of the California Rules of Court may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).) This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

---

[5] Petitioner did not appear for oral argument in this matter. Instead, he sent a letter stating that he had submitted his resignation as a member of the State Bar and therefore withdrew his petition for writ of review. Rule 960 of the California Rules of Court governs an attorney's resignation from membership in the State Bar while disciplinary proceedings are pending. It gives this court the final authority to accept or reject an attorney's tendered resignation. Because petitioner tendered his resignation at the last minute, and because the record shows that disbarment is appropriate in this case, we reject petitioner's tendered resignation from membership in the State Bar.