(124 P.3d 1067)

No. 93,814

Thomas R. DeBerry, *Appellant,* v. Kansas State Board of Accountancy, *Appellee.*

Opinion filed December 23, 2005.

*Michael L. Jones,* of Wichita, for·appellant.

*Stephen O. Phillips,* assistant attorney general, of Topeka, for appellee.

Before MCANANY, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT, J.: Thomas R. DeBerry appeals the Kansas State Board of Accountancy's (Board) decision disciplining his work as a certified public accountant (CPA). We affirm.

DeBerry has been in private practice as a CPA for approximately 25 years. In August 2001, DeBerry joined the board of directors of the First State Bank of Kiowa, Kansas (Bank). DeBerry also owned Bank stock.

In May 2002, DeBerry and the Bank entered an agreement whereby DeBerry was to perform a director's examination for the Bank. In accounting terms, a director's examination is known as an agreed-upon procedure. The examination included verification of customers' accounts and testing of other accounting records. DeBerry completed the examination in November 2002 and submitted the report on his CPA letterhead.

In July 2002, DeBerry renewed his CPA permit. The renewal form had boxes to indicate the types of work in which he was engaged. DeBerry checked the boxes entitled "compilation" and "tax" but did not check the box labeled "agreed-upon procedure."

In February 2002, DeBerry signed an agreement whereby the Bank would pay him referral fees for individuals he referred to the Bank for certain types of loans. DeBerry received $422.50 in referral fees from the Bank.

In May 2003, the Board sent DeBerry a letter requesting information regarding the Bank director's examination and details about DeBerry's contractual relationship with the Bank. DeBerry responded that his relationship with the Bank had ended, and he had not done anything wrong by performing a director's examination while he was on the Bank's board of directors. The Board requested documents from DeBerry in the fall of 2003. DeBerry responded to the request through his counsel.

The investigation resulted in the Board filing a petition alleging that DeBerry's actions violated K.S.A. 1-308(a), K.S.A. 1-311(a)(1) and (7), K.S.A. 1-501, K.A.R. 74-5-103(a), K.A.R. 74-5-205(c), and K.A.R. 74-11-7. The Board asked that DeBerry's CPA permit be revoked or suspended and a $2,000 fine be imposed.

The Board held an evidentiary hearing and issued its final order in December 2003. The Board found there was clear and convinc-

ing evidence that DeBerry willfully violated K.A.R. 74-5-205(c) by performing an agreed-upon procedure for the Bank while serving on its board of directors. The Board also found that DeBerry willfully violated K.A.R. 74-5-103(b) by accepting a referral fee for the sale of services to a client. Finally, the Board found that DeBerry violated other CPA standards and regulations by failing to obtain the proper registration status and peer review services. DeBerry's CPA permit was suspended for 90 days, he was fined $2,000, and was ordered to successfully complete a course entitled "Professional Ethics: The AICPA's Comprehensive Course."

DeBerry asked the Board to stay the sanctions in the Board's final order. The Board declined DeBerry's request, finding that the sanctions should extend from the date of the final order until April 15, 2004. DeBerry filed a petition for reconsideration with the Board, which was denied. DeBerry filed a petition for review with the trial court. While its decision on judicial review was pending, the trial court granted DeBerry's request to stay the payment of the fine and attendance at the ethics course.

After considering the written submissions from the parties, the trial court affirmed the Board's findings, concluding that the Board's action was supported by substantial competent evidence. DeBerry timely appeals.

### *Violation of K.A.R. 74-5-205(c)*

DeBerry argues that the Board failed to prove that he "willfully" violated K.A.R. 74-5-205(c). DeBerry maintains that in order to prove he acted willfully, the Board needed to find an intent to violate the law.

In reviewing a trial court's decision that involved review of an administrative agency's action, an appellate court must first determine whether the trial court followed the requirements and restrictions placed upon it and then review the administrative agency's action under the same requirements and restrictions as the trial court. The trial court may not substitute its judgment for that of an administrative agency. The trial court is restricted to considering whether, as a matter of law, (1) the administrative agency acted fraudulently, arbitrarily, or capriciously; (2) the

agency's administrative order was supported by substantial evidence; and (3) the agency's action was within the scope of its authority. *Lacy v. Kansas Dental Board*, 274 Kan. 1031, 1040, 58 P.3d 668 (2002).

This case involves the interpretation of language found in K.A.R. 74-5-205(c), which requires that a CPA who provides attestation services must conform to the statements on standards for attestation engagements (SSAE), which are found in volume one of the American Institute of Certified Public Accountants (AICPA) Professional Standards. The AICPA professional standards are adopted by reference in K.A.R. 74-11-6. DeBerry was disciplined pursuant to K.S.A. 1-311(a)(7) for "willful violation of a rule of professional conduct."

Administrative regulations have the force and effect of law and are presumed to be valid. One who challenges an administrative regulation has the burden of showing its invalidity. *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 495, 86 P.3d 513 (2004). The interpretation of a statute or regulation by an administrative agency charged with the responsibility of enforcing that statute or regulation is entitled to judicial deference. Deference to an agency's interpretation is especially appropriate when the agency is one of special competence and experience. However, the final interpretation of a statute or regulation always rests with the courts. See *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 247, 75 P.3d 226 (2003).

The word "willfully" is not defined anywhere in the statutes or regulations relating to CPA's. "Willful" is defined as: "Voluntary and intentional, but not necessarily malicious." Black's Law Dictionary 1630 (8th ed. 2004). This definition does not, however, clarify whether the requirement of intent applies solely to the behavior or whether the actor must also intend the violation of the professional standard.

Kansas appellate courts have not considered the meaning of "willful" within the context of the violation of a professional standard or regulation. Several other states have addressed the issue under similar circumstances. In *Phillips v. State Bar*, 49 Cal.3d 944, 264 Cal. Rptr. 346, 782 P.2d 587 (1989), an attorney was disbarred

after several client complaints. On appeal, Phillips argued that he had not acted willfully because he was suffering from a personality disorder and lacked the intent to commit misconduct. The California Supreme Court concluded that willful is " ' "simply a purpose or willingness to commit the act, or make the omission referred to [and] . . . does not require any intent to violate law, or to injure another, or to acquire any advantage." ' [Citations omitted.]" 49 Cal.3d at 952. Therefore, to prove a willful violation, an administrative agency must prove that a party " ' "acted or omitted to act purposely, that is, that [the party] knew what [the party] was doing or not doing and that [the party] intended either to commit the act or to abstain from committing it." ' [Citations omitted.]" 49 Cal.3d at 952; see *Com. State Bd. of Nurse v. Rafferty*, 508 Pa. 566, 572, 499 A.2d 289 (1985).

In the instant case, it is undisputed that DeBerry did not conform to the SSAE professional standards when performing an agreed-upon procedure because he failed to seek the appropriate level of peer review. DeBerry claimed that he was "technically" in violation of "some rules"; however, he did not have any intent to deceive or defraud.

To prove a willful violation of a CPA's professional standards and regulations, the Board must only prove that the CPA intended to commit the forbidden act or to abstain from doing something the CPA was required to do. By DeBerry's own admissions, there was substantial competent evidence to prove and support the findings of his willful violation of the Board's regulations. We agree that the Board correctly determined a willful violation occurred in the absence of a specific intent to violate the standards and regulations.

DeBerry argues that he did not willfully violate the law because he was in compliance with relevant banking industry regulations. DeBerry believes his "complete adherence to the 'Other Guidance' section of the AICPA Code of Professional Conduct proves that he took the appropriate precautions" to safeguard his independence during the director's examination.

The AICPA professional standards adopted by K.A.R. 74-11-6 has a standard labeled "Other Guidance." One paragraph of this standard reads:

"A member should also consult, if applicable, the ethical standards of his state CPA society, state board of accountancy, the Securities and Exchange Commission, and any other governmental agency which may regulate his client's business or use his report to evaluate the client's compliance with applicable laws and related regulations."

At the Board hearing, DeBerry was asked about another AICPA professional standard which holds that a CPA's independence is considered to be impaired if the CPA is a director during the period covered by the financial statements or examination. DeBerry acknowledged that language but claimed he was conforming with banking rules and regulations since those were the rules that governed his client, the Bank. DeBerry ignores the fact that he submitted the director's examination on his CPA letterhead. The letterhead made it appear that DeBerry was acting as a CPA, not as an independent examiner.

DeBerry's appellate brief makes repeated references to the ethical standards that cover the banking industry. However, DeBerry has not included these banking standards and regulations in the record on appeal. Without a copy of the banking standards and regulations, we are unable to conclude whether DeBerry was justified in relying on those standards instead of the AICPA professional standards and the Board's administrative regulations. An appellant has the duty to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails. *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 172, 61 P.3d 687 (2003).

It is clear that DeBerry submitted his director's examination report on his CPA letterhead, which included the title of "Certified Bank Auditor." DeBerry signed his letter as a member of the Bank's board of directors. Accordingly, we believe that DeBerry was acting in his capacity as a CPA at the time he submitted the report, and the Board was correct in finding that DeBerry should have followed the AICPA's professional standards and the Board's regulations.

We conclude there was substantial competent evidence to support the Board's findings that DeBerry willfully violated K.A.R. 74-

5-205(c) when he performed a director's examination of the Bank while serving on the Bank's board of directors.

## Violation of K.A.R. 74-5-103(b)

DeBerry contends that he was initially charged with violating K.A.R. 74-5-103(a), but the Board eventually found he violated K.A.R. 74-5-103(b). K.A.R. 74-5-103(a) bars a CPA from paying a commission to a third party in order to obtain a client. Subsection (b) prohibits a CPA from accepting referral fees.

K.A.R. 74-5-103(b) reads, in relevant part:

"A certified public accountant may accept or pay a referral fee for the sale of services or products to a client if the following conditions are met:

"(1) The CPA or the CPA's firm does not perform any of the following for the client:

. . . .

(E) any agreed-upon procedures, as defined by the AICPA professional standards, as adopted by reference in K.A.R. 74-11-6."

Under the Kansas Administrative Procedures Act, K.S.A. 77-501 *et seq.*, a party must be given "a statement of the issues involved and, to the extent known to the presiding officer, of the matters asserted by the parties." K.S.A. 2004 Supp. 77-518(c)(7). Count II of the petition alleged that DeBerry violated the regulation because the "loan referral contract with the Bank is prohibited and a violation of commission and referral fees requirements as proscribed in K.A.R. 75-5-103(a)(1)(E) [*sic*]." Even though the petition referenced subsection (a), DeBerry was advised of the facts supporting the charges against him, and the facts supported a violation of K.A.R. 75-5-103(b). Also, during the hearing before the Board, DeBerry testified about the charges, claiming that he had not violated the regulations because he had followed banking standards. DeBerry was not prejudiced by the wrong subsection citation in the petition.

## Violation of K.S.A. 1-308(a) and K.S.A. 1-501

On appeal, DeBerry contends that K.S.A. 1-308(a) and K.S.A. 1-501 are "unconstitutionally vague." DeBerry claims that he never received an application from the Board prompting him to register as a firm and, given his status as a sole practitioner, it did not occur

to him to do so. To support his argument, DeBerry relies on a 10-year-old CPA directory that had been mailed to him.

Whether a statute is unconstitutionally vague or overbroad is a question of law over which an appellate court has unlimited review. The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is a court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond reasonable doubt. *State v. Whitesell*, 270 Kan. 259, Syl. ¶ 1, 13 P.3d 887 (2000).

The Kansas Supreme Court has held that the constitutionality of a statute, the violation of which is a criminal offense, should be determined by the standards applied to criminal statutes generally, even though considered in the context of a civil suit. If a statute could subject a person to both criminal and administrative actions, the criminal standard for determining vagueness applies. *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, 611-12, 913 P.2d 142 (1996).

A criminal statute is unconstitutionally vague and indefinite unless its language conveys a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice. The determination of whether a criminal statute is unconstitutionally vague involves a second inquiry of whether the law adequately guards against arbitrary and discriminatory enforcement. *Smith v. Martens*, 279 Kan. 242, 245-46, 106 P.3d 28 (2005). However, this case involves an administrative action, *i.e.*, a fine or penalty, not a criminal offense, and we find the applicable statutes are not vague.

A CPA who issues reports that are subject to peer review must register, as a firm, under K.S.A. 1-308(a). K.S.A. 1-308(a) specifically mentions "any individual who operates as a sole practitioner and who issues reports subject to peer review." Pursuant to K.S.A. 1-501(a), a firm providing attest services (attestation) must undergo peer review. It is undisputed that the director's examination DeBerry performed for the Bank was an attest service.

Attached to DeBerry's permit renewal application were specific instructions informing applicants of the requirements for peer review. Applicants were also told that if they were issuing a report after performing an agreed-upon procedure, they must notify the Board of the date of issuance of the first report subject to peer review and register as a firm with the Board.

At the Board hearing, DeBerry not only admitted that he should have checked the appropriate box, but also that the literature which accompanied the application "gave enough criteria there that [he knew] he should have check marked the box." DeBerry's appellate argument that he was too confused to comply with the statutes seems to be negated by his comments to the Board. Further, the language of both statutes at issue could not be more clear. We do not find these statutes to be vague. DeBerry's argument is without merit.

### Was the Board's Order a Final Order?

DeBerry argues that the final order from the Board was invalid because it was signed by Susan L. Somers in her capacity as the Board's executive director. DeBerry claims that this would have been invalid in Nebraska, and the order should have been signed either by all of the Board members or by the chairperson. DeBerry cites K.S.A. 1-311(a) for the proposition that the Board, not its executive director, has the power to revoke or suspend a CPA permit or certificate.

It is undisputed that Somers signed the Board's final order. However, DeBerry failed to object to this in his motion for reconsideration in front of the Board or in his petition for judicial review. Issues not raised before the trial court cannot be raised on appeal. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). We do not see any merit in DeBerry's argument about the validity of Somers signing the final order.

Next, DeBerry argues that the suspension of his certificate to practice did not occur until the final order was filed approximately 1 month after the hearing. DeBerry believes that this was a deliberate attempt by the Board to have his suspension fall during tax season, thus causing him to lose clients.

K.S.A. 77-526(g) requires that a final order be issued within 30 days after the conclusion of the hearing. DeBerry's administrative hearing was held on December 12, 2003. The certificate of service on the Board's final order is dated January 16, 2004. The 30-day time limit is a procedural requirement, directory in nature, intended to secure order, system, and forthwith dispatch of public business. *Expert Environmental Control, Inc. v. Walker,* 13 Kan. App. 2d 56, 58, 761 P.2d 320 (1988).

The delay in issuing the Board's final order was minimal and understandable, given the Christmas and New Year's holidays which fell between the hearing and the issuance of the final order. In addition, there is no evidence that the 5-day delay was prejudicial to DeBerry. DeBerry's permit suspension still would have been in effect until March 26, 2004. Given that fact and the complete absence of any evidence of malice from the record on appeal, we disagree with DeBerry that the timing of the issuance of the final order was in any way deliberate.

At the hearing, the Board ordered that DeBerry was required to successfully complete the AICPA comprehensive ethics exam with a score of 90 percent or higher. DeBerry now argues that since the standard pass rate is 70 percent, the requirement that DeBerry achieve a score of 90 percent is arbitrary.

K.S.A. 1-311(b) allows the Board to require satisfactory completion of specified continuing education programs. DeBerry's argument about a 70 percent score is not relevant to this discussion; that benchmark is used only when an individual pursues continuing education via a self-study program. See K.A.R. 74-4-8(d)(4). K.S.A. 1-311(b) does not comment about a pass rate, meaning the Board is free to implement its own standard. It is important to note that DeBerry was ordered to attend an ethics course. Given DeBerry's admitted lack of understanding of the AICPA professional standards, that requirement does not seem unreasonable. Further, it is not unusual that the details of the Board's findings would be settled in the final order. Therefore, we see no inconsistency which needs to be addressed.

Finally, the Board ordered DeBerry to pay a $2,000 fine. The final order clarified that the fine could not be paid with a credit

card. DeBerry contends that this is an "unauthorized and arbitrary" modification, and questions whether this violates the Board's contracts with certain credit card companies.

K.S.A. 1-311(a) establishes the Board's authority to impose an administrative fine of up to $2,000. There is no mention of the method of payment, which is a matter left to the Board's discretion. Further, there is no evidence in the record on appeal of any contractual relationship between the Board and any credit card companies; such a matter would be far beyond the scope of this appeal.

We find no error in the final order.

## *Did the Trial Court Violate K.S.A. 77-621?*

K.S.A. 77-621 governs the scope of review for agency actions. In his appellate brief, DeBerry provides this court with other examples of Board action which DeBerry believes were unreasonable, arbitrary, or capricious.

First, DeBerry questions the Board's practice of accepting an anonymous, oral complaint. DeBerry contends that he has been disadvantaged because he does not know the identity of the person who prompted this "anonymous assassination." At the administrative hearing, DeBerry conceded the validity of anonymous, oral complaints, acknowledging that they are frequently used in the legal profession. To complain otherwise on appeal is to invite error. A party may not invite error and then complain of that error on appeal. *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 296, 64 P.3d 357 (2003).

Next, DeBerry contends that the Board evidenced a "departure from rationality" by comparing his actions to the incidents which occurred at Enron and WorldCom. The Board's final order reads: "The independence of a CPA who performs attest services for the public is vital to the accountancy profession. The Enron and WorldCom debacles evidence the dangers of disregarding this tenet." The Enron and WorldCom scandals demonstrated the problems that occur when the accounting profession fails to exercise appropriate independence. DeBerry violated professional standards relating to independence. There was no error with the Board's use of the analogy.

Next, DeBerry contends that his $2,000 fine was in excess of the typical administrative penalty. DeBerry provides this court with information not included in the record on appeal, about past fines, which he claims cause his $2,000 penalty to be "unconscionable." K.S.A. 1-311(a)(7) allows the Board to impose a fine of up to $2,000 for a willful violation of a rule of professional conduct. We fail to see how a fine which complies with the applicable statute is unconscionable. The discipline the Board determined and imposed in other cases is irrelevant.

Next, DeBerry claims he was prejudiced by Paul Allen's role on the Board. DeBerry claims that due to a past business relationship, Allen lured DeBerry into a violation of the CPA standards or regulations. DeBerry makes the assertion that the Board's actions were tainted by "Allen's desire to exert revenge" on DeBerry. The record on appeal shows that Allen recused himself from DeBerry's hearing and did not participate in the deliberations. DeBerry's claims of unethical and possibly criminal conduct by the Board seem irresponsible in light of the complete lack of evidence to support his assertions. DeBerry's contentions about bias and prejudice are without merit.

DeBerry next contends that the Board failed to supply him with requested discovery. DeBerry admits that the Board told him there were no items to be produced. DeBerry theorizes that there is a cache of hidden documents being suppressed, but can provide no proof that such paperwork exists.

DeBerry next claims that Somers contradicted herself in a letter where she mentioned that she had spoken with one of the Bank's directors who did not want to file a complaint. DeBerry essentially alleges that Somers lied when she stated that she did not have any notes from that conversation. DeBerry makes yet another accusation without any support in the record on appeal.

We have thoroughly reviewed all of DeBerry's claims and determined that the Board's decision was valid.

Affirmed.