No. 41,761

COMMUNITY OF WOODSTON, et al., *Appellants*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*, MISSOURI PACIFIC RAILROAD COMPANY, *Appellee*.

(353 P. 2d 206)

Opinion filed June 11, 1960.

*Harvey D. Ashworth*, of Topeka, argued the cause, and *A. Harry Crane, Ward D. Martin, Arthur L. Claussen* and *Raymond L. Spring*, all of Topeka, and *C. O. Griffith*, of St. Louis, Missouri, were with him on the briefs for appellants.

*James M. Caplinger*, of Topeka, argued the cause, and *J. Robert Wilson*, of Topeka, was with him on the briefs for appellee State Corporation Commission of the State of Kansas.

*Ralph M. Hope*, of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Richard W. Stavely, Charles S. Lindberg* and *Ronald M. Gott*, all of Wichita, were with him on the briefs for appellee Missouri Pacific Railroad Company.

The opinion of the court was delivered by

FATZER, J.: The principal question presented is whether an order of the State Corporation Commission authorizing a railroad company to dualize 24 of its agency stations whereby one agent will

serve two stations instead of one, is reasonable and lawful. The district court sustained the order, and eleven protesting cities and affected patrons and organizations have appealed.

On May 23, 1958, application was made by the Missouri Pacific Railroad Company to the State Corporation Commission for an order to combine or dualize 30 agency stations on its Northern Kansas Division consisting of approximately 470 miles of track and 49 one-man station agencies. The application alleged that with respect to the 30 station agencies involved the railroad maintained an agent who was on duty at each station eight hours each day, five days each week, Monday through Friday; that the business of the railroad at each of the stations did not require or justify the maintenance of an agent at each station eight hours a day nor did public convenience and necessity require it in order for proper and adequate service to be furnished and maintained at each station, and that one agent could efficiently and properly handle the business of the railroad and the duties of the agent at two stations by being in attendance at each station for only a portion of each day. Attached to the application was Exhibit A which listed the 30 agency stations sought to be dualized and the railroad's proposed "pairing" of the two stations to be served by one agent, as well as the proposed "base station" where the book work would be performed by the agent and most of the records pertaining to both stations would be kept. The station agencies, as paired, are as follows:

| | |
|---|---|
| Muscotah | Clifton |
| *Effingham | *Clyde |
| Whiting | Scottsville |
| *Netawaka | *Jamestown |
| Wetmore | Solomon Rapids |
| *Goff | *Beloit |
| Corning | Woodston |
| *Centralia | *Alton |
| Vermillion | Gaylord |
| *Frankfort | *Portis |
| Waterville | Kirwin |
| *Blue Rapids | *Cedar |
| Barnes | Scandia |
| *Greenleaf | *Republic |
| Palmer | |
| *Linn | |

(Asterisks indicate proposed base stations.)

The application further alleged that the dualization of the 30 station agencies would result in a net annual saving to the railroad of $65,000 and that the efficient and economical management of the railroad required that the station agencies be combined. The prayer was that an order be entered authorizing the railroad to dualize the station agencies named by operating two of the stations with one agent in the manner set forth, and for such other and further relief as the commission might deem proper.

The application was docketed as No. 57,869-R, and after proper notice was given to all interested parties, which the appellants concede was received, the commission held public hearings at Topeka on August 11, and 12, 1958, where the railroad presented two witnesses and exhibits, and ten witnesses for the protestants were heard. Upon request, the hearings were continued until October 9, 1958, when a further hearing was held at Concordia and an additional twenty witnesses for the protestants were heard, and the record was closed. During the hearing, seven communities appeared by counsel and thirty protestants from thirteen communities testified; some thirteen exhibits were received in evidence and 609 pages of testimony was taken.

On February 12, 1959, the commission issued its report and order denying the railroad's application in part and granting it in part. The commission found that public convenience and necessity required the service of a full-time agent at the six following stations: Wetmore, Centralia, Blue Rapids, Greenleaf, Scandia and Republic. With respect to the other 24 station agencies, it found that much of the protestants' testimony concerned individual convenience rather than actual public convenience and necessity, and, from the evidence adduced, public convenience and necessity did not require a full-time agent at those stations since the cumulative duties at two stations could be performed by one agent within an eight-hour period and the agent could serve both stations without materially affecting adequate and efficient service to the public, and that for the railroad to provide a full-time agent at a station with less than two hours work per day was an uneconomical practice and should be eliminated.

The commission further found that the "pairings" proposed by the railroad, except those affecting the stations at Goff, Corning, Waterville, and Barnes, should be granted *in toto;* however, it did not establish "base stations" but only recommended they be the

same as proposed by the railroad, except Gaylord was recommended as the base station rather than Portis. Concerning Goff, Corning, Waterville, and Barnes, the railroad originally proposed that Goff be paired with Wetmore, and Corning be paired with Centralia, with Goff and Centralia being base stations. But, the commission ordered full-time agents continued at both Wetmore and Centralia, thus leaving Goff and Corning without partners. Since those two stations were only six miles apart, the commission ordered that they be paired, with Goff recommended as the base station. The same was true with Waterville and Barnes. Those stations were ordered paired because their proposed partners, Blue Rapids and Greenleaf, respectively, were also ordered to maintain full-time agents, but the commission recommended no base station.

The commission further found that all less-than-car-load (LCL) shipments from and to the 30 stations involved, except Scandia and Republic, were handled by substitute motor truck service owned and operated by the railroad and that no change in the method of handling either car load or LCL shipments, including pick-up and delivery service and local drayage service now being offered, was contemplated by the railroad.

In making its order, the commission retained jurisdiction of the subject matter and the parties, and found it was the prerogative of management to assign the required hours that a station would be served by an agent and to designate the base station so long as the railroad arranged the hours of service of the agent to best fit the needs of the communities served, but upon complaint concerning inadequate or unsatisfactory service at a dualized station, the commission would investigate and make such adjustment or correction as might be warranted.

Pursuant to G. S. 1949, 66-118b the eleven communities of Woodston, Alton, Gaylord, Portis, Kirwin, Barnes, Whiting, Linn, Waterville, Vermillion and Cedar, many individuals from those communities, except Portis, and the Order of Railroad Telegraphers (all appellants here) filed an application with the commission for a rehearing, which was denied on March 3, 1959. Thereafter, and pursuant to G. S. 1949, 66-118c, *et seq.*, the appellants filed an application for review in the district court of Osborne County alleging the identical claims of invalidity of the commission's order as set forth in their application for rehearing to the commission. The railroad filed a motion to intervene in the review proceedings, which was granted. On June 25, 1959, the case was tried upon the

transcript of the evidence taken before the commission and oral arguments were made by counsel for all the parties, following which the district court took the cause under advisement.

On July 1, 1959, the district court found the commission's order reasonable and lawful and entered judgment sustaining the order. The appellants filed a motion for a new trial which was overruled, and, as previously indicated, perfected this appeal.

While the appellants make nine specifications of error they brief and argue only that the district court erred in failing to find: (1) that the commission's order was unlawful because it (a) was wider in scope than the railroad's application, the notice of hearing, and the evidence, and (b) attempted to shift the burden of proof of the public convenience and necessity from the railroad to the appellants; and (2) that the order was unreasonable because it (a) should have found the commission erred in not granting the application for rehearing, and (b) did not weigh the evidence and determine the order unreasonable. Consequently, we will consider only the points briefed and argued, since upon appellate review specifications of error which are neither briefed nor argued will be regarded as abandoned (*Brent v. McDonald*, 180 Kan. 142, 300 P. 2d 396; *Lambertz v. Builders, Inc.*, 183 Kan. 602, 331 P. 2d 559; *Perry v. Schmitt*, 184 Kan. 758, 339 P. 2d 36).

With respect to the appellants' first contention, they argue that in construing the railroad's application the commission was bound by the rules for constructing a pleading in a civil action and that where a court or a commission enters a judgment or awards relief beyond the issues of a petition or the scope of an application, excessive relief is not merely illegal but renders the judgment or order void for want of jurisdiction. They cite and rely upon *Gille v. Emmons*, 58 Kan. 118, 48 P. 569; *In re Estate of Hoover*, 156 Kan. 31, 131 P. 2d 917; *Atchison, T. & S. F. Rld. Co. v. State Corporation Comm.*, 166 Kan. 548, 203 P. 2d 211; *Tennessee Cent. Ry. Co. v. Pharr, et al.*, 29 Tenn. App. 531, 198 S. W. 2d 289; *Leonard Bros. Transfer & Stor. Co. v. Douglass*, 159 Fla. 510, 32 So. 2d 156, and *Chicago Rys. Co. v. Commerce Com.*, 336 Ill. 51, 167 N. E. 840. They argue that nowhere did the application seek the relief granted by the commission, that is to say, it did not specifically ask the commission to hold public hearings to authorize *the railroad* to fix the hours of service, or designate base stations other than those proposed which might best serve the public at dualized stations, and the order authorizing the railroad to do so was wider in scope than the relief

sought. Further, that although the 30 communities had notice the railroad was seeking authority to provide only half-time service, the commission was required to either grant or deny the application in the exact manner proposed, and that the dualizing of Goff and Corning, Waterville and Barnes different than proposed, and recommending that Gaylord be the base station rather than Portis, was also wider in scope than the relief sought and rendered the order unlawful and void *in toto*.

Under our statutes the commission has general supervision over all railroads operating in the state and has the power and the duty to regulate them (G. S. 1949, 66-156), including the service rendered (66-107), and, upon complaint or its own initiative, may hold hearings with respect thereto (66-111 and 66-112) and make decisions and orders which the evidence justifies (66-113). The theme of the application in question was that the business at each station did not require or justify the maintenance of an agent for eight hours a day, nor did the public convenience and necessity require it in order for proper and adequate service to be rendered; that one agent could efficiently and properly handle the business and duties of two stations by being in attendance at each of the two stations for only a portion of each day, and, based upon its operational experience, the railroad merely proposed which agencies should be paired for that purpose. In making the application the railroad owed the practical duty to the commission to make such a proposal.

The pleadings required in an administrative proceeding may be governed by statute or by rules and regulations of the administrative body, or both (73 C. J. S., Public Administrative Bodies and Procedure, § 120, p. 439). G. S. 1949, 66-106 authorizes the commission to adopt reasonable and proper rules and regulations to govern proceedings before it and to regulate the manner of all investigations and hearings. To that end, the commission has adopted regulations prescribing practices and procedures for the commencement of proceedings before it either by formal or informal complaints, applications or petitions, the substance, form and sufficiency of which is prescribed therein (see §§ 82-1-1 to 82-1-126, Rules of Practice and Procedure before the Commission filed revisor of statutes December 31, 1947, to date). It is now well established that technical rules of pleadings such as govern civil or criminal actions are not applicable to applications or pleadings filed with an administrative agency (*Meffert v. Medical Board,* 66 Kan. 710,

72 P. 247; *Richardson v. Simpson,* 88 Kan. 684, 129 P. 1128, 41 L. R. A. [NS] 911, affirmed 195 U. S. 625, 49 L. Ed. 350, 25 S. Ct. 790; 42 Am. Jur., Public Administrative Law, § 124, pp. 458, 459; 73 C. J. S., Public Administrative Bodies and Procedure, § 120, p. 439; *DeMartini v. Industrial Acc. Com.,* 90 Cal. App. 2d 139, 202 P. 2d 828; *Peak v. Industrial Acc. Com.,* 82 Cal. App. 2d 926, 187 P. 2d 905; *Parrish v. Fey,* 102 Colo. 258, 78 P. 2d 633; *State Ex Rel. Crown Coach Co. v. Pub. Serv. Comm.,* 238 Mo. App. 287, 179 S. W. 2d 123), and liberality is to be indulged as to their form and substance. However, a statement with reasonable and substantial certainty is required so as to advise a respondent of the matters charged and the relief sought (42 Am. Jur., Public Administrative Law, § 124, p. 458; 73 C. J. S., Public Utilities, § 52, p. 1119).

The application in the instant proceeding clearly stated the nature of the subject matter and the relief sought. It asked for the combining or dualizing of two agencies to be served by one agent and also asked for such other relief as was within the commission's statutory power to grant. The dualization of all of the 30 station agencies was pleaded and prayed for and was the issue in the proceeding. Evidence was introduced in support of the application as to all communities affected. But, most important is the fact that only communities and agencies included in the application were included in the order. No other agencies were included and the order made no attempt to assume jurisdiction of any agency not involved in the proceeding. While the allegations of paragraph 5 and the prayer contain the phrases "in the manner above referred to" and "in the same manner set forth herein," respectively (reference being made to the pairing of stations set forth in Exhibit A), contrary to the appellants' contention, the commission's power to dualize or pair station agencies is not limited to the combinations as proposed by the railroad since such a holding would deprive the commission of jurisdiction conferred by law to make orders and decisions based upon all the evidence introduced when such evidence might require a result different than proposed by the railroad. In the instant case the commission did find that the evidence required, in certain respects, a different result and ordered the maintenance of full-time agents at six stations, and dualized four stations other than proposed by the railroad. Whether the evidence justified full-time agents at the six station agencies is not before us since the railroad did not seek a rehearing before the commission or a review in the district court on that question.

The appellants rely principally upon *Atchison, T. & S. F. Rld. Co. v. State Corporation Comm.,* 166 Kan. 548, 203 P. 211, in which the commission held hearings on cement rates between *all cement producing points in Kansas* and then issued an order covering the transportation of cement in carload lots *from all origins in the state.* There were only approximately a half dozen cement producing points in the state but as the order was issued it affected almost every city in the state. An application for rehearing was filed, and the commission, without notice or hearing, issued a *nunc pro tunc* order purporting to substitute the words "all Cement producing points" for the words "from all origins in the state" appearing in the original order. The court held that when the commission on its own motion institutes a hearing concerning freight rates on cement from producing points in Kansas and after a full hearing upon that question makes an order much wider in its scope so as to apply to shipments from all points of origin in Kansas, the order is invalid on its face. That is not the situation here. In the present proceeding every community, patron and station agency covered by the order was included in the application, notice of hearing was sent to all, and evidence was introduced in support of the application as to all communities affected.

We have also examined the authorities cited by the appellants from other jurisdictions but shall not extend this opinion by discussing them. It is sufficient to say that the appellants' own analysis of them and the quotations from them in their brief show that they have no application to this case except to support the conclusion that when the pleadings and evidence are considered as a whole, appellants place too narrow a construction on the issues made and tried and the findings and order of the commission. Clearly, the order here was not wider in scope than the application, the notice, and the evidence introduced at the hearings, and the appellants' contention that the order was void upon its face cannot be sustained.

The appellants next argue that the order is unlawful because it shifts the burden of proof of public convenience and necessity from the railroad to the applicants. They argue that under the commission's order an aggrieved person would be required to file a complaint with the commission; that if it were so inclined, it would order a hearing, but the burden would be upon the complainant to show that public convenience and necessity had not been met by the dualization, and, in any event, the matter could not be heard

in the community where all the witnesses are available as directed by G. S. 1959 Supp., 66-112. The appellants' point is not well taken. That portion of the order in question reads:

"IT IS FURTHER BY THE COMMISSION ORDERED: That where dualization of agencies is placed into effect, the applicant shall arrange the hours of service of the agent and the designating of base stations as to best fit the needs of the communities served, or, that this Commission, upon complaint filed by a party directly affected, may order a change after due investigation and consideration.

"The Commission retains jurisdiction of the subject matter and the parties for the purpose of entering such further order or orders as from time to time it may deem necessary."

As an integral part of the dualization, the commission found that it was the prerogative of management to arrange the hours of service of an agent at a station and designate the base station subject to the condition, however, that the service actually rendered meets public convenience and necessity. It is obvious that if a complaint is made concerning the hours of service or the designation of a base station the commission's continuing jurisdiction will be exercised and the burden of proof under the order will not shift to the complainant but will remain in the railroad to show that adequate and sufficient service is rendered to the public at the particular station even though accomplished by a part-time station agency. With respect to the hearing of a complaint G. S. 1959 Supp., 66-112 contains directions to the commission to hold all hearings relating to the *discontinuance* of service of a railway agency in the community affected. Here, the very purpose of the application was to keep all the 30 station agencies in operation and not discontinue them, and the order did not discontinue service of a station agency within the meaning of the statute.

In support of their contention that the commission's order was unreasonable, the appellants first assert the commission should have granted a rehearing and the district court erred in not ordering a rehearing because the eleven appellant communities, *i. e.*, Woodston, Gaylord, Linn, Portis, Alton, Kirwin, Cedar, Barnes, Whiting, Waterville and Vermillion were denied their day in court since the only relief sought in the application was the combining of station agencies as proposed by the railroad and their evidence was only in opposition thereto, whereas the commission ordered Waterville paired with Barnes instead of Blue Rapids (as to which the application was denied) and Goff with Corning instead of

Wetmore (as to which the application was denied), and recommended that Gaylord be the base station instead of Portis, thus affording them no opportunity to introduce evidence in opposition to the "pairings" and base stations ordered by the commission.

Contrary to appellants' contention, the relief sought in the application was not limited to the "pairings" of station agencies as proposed by the railroad, nor did the suggested combinations make the only issue upon which evidence could be introduced or upon which the commission could base its order. The appellants place too narrow a construction upon the issues made by the application and the notice of hearing. The application sought the dualization of the 30 station agencies by providing part-time service at each station. It invoked the commission's jurisdiction to determine whether public convenience and necessity would be served thereby. As a result of the filing of the application and notice given by the commission, each community was advised that evidence would be taken to determine whether the relief sought should be denied, or granted by ordering part-time service at the respective stations by dualization. However, four communities about which complaint is here made: Goff, Corning, Portis and Barnes, although notified, chose not to appear and take part in the hearings. While 30 protesting witnesses gave testimony in opposition to the application, little of their evidence related to the effect of their being dualized with any one particular agency, but dealt primarily with the claim that the stations in their communities should be maintained by full-time agents. The evidence was undisputed that, with respect to all the 24 station agencies, one agent would have more than ample time to perform the duties at two stations and that public convenience and necessity would be served.

The district court apparently felt that, as did the commission, adequate opportunity had been furnished to the interested parties and that nothing would be gained by a rehearing. Under all the circumstances we cannot say the order is unfair, unwise or unjust for the reasons asserted, and the district court did not err in failing to order the commission to grant the application for rehearing.

The appellants lastly contend the district court erred in failing to weigh the evidence and determine that the order was unreasonable. They cite *Union Pac. Rld. Co. v. State Corporation Commission,* 165 Kan. 368, 194 P. 2d 939. The decision is not helpful. In that case the memorandum opinion of the district court showed it had

the mistaken view that its only duty was to uphold the order if the record disclosed any evidence to sustain it. In reversing the case this court stated that a reviewing tribunal is required to base its independent decision upon the facts and circumstances to be gleaned from the entire record and in doing so may weigh evidence solely for the purpose of determining whether the order is reasonable. In the instant case the journal entry recites:

"The court, having reviewed the record, having considered the briefs and arguments of counsel, and being advised in the premises, finds that the order of the . . . commission . . . dated December 17, 1958, and under review in this proceeding is lawful and reasonable, and should be sustained."

It is obvious the district court was familiar with the rule that it was required to weigh the evidence for the purpose of determining whether the order was lawful and reasonable, and that it performed its duty. Aside from that, a court is presumed to have done its duty and acted in accordance with the law—not to have failed to do so (*In re Wright*, 74 Kan. 406, 409, 86 P. 460; *Donaldson v. Cox*, 103 Kan. 791, 176 P. 647). See, also, *Rupp v. Rupp*, 171 Kan. 357, 233 P. 2d 709, and 3 Am. Jur., Appeal and Error, §§ 923, 924, pp. 489, 490.

The appellants seek to justify their claim that the order was unreasonable because the evidence tended to show that some of the stations which were not dualized, such as Scandia, Republic and Wetmore, had less business than some stations which were ordered dualized. As previously indicated, whether the evidence justified full-time agents at those stations is a matter not before us since the railroad did not seek a rehearing before the commission or a review in the district court on that question. But, in any event, the evidence amply supports the order dualizing the 24 station agencies and that public convenience and necessity was served thereby.

After a careful examination of the record we conclude the district court did not err in its decision finding the order lawful and reasonable, and sustaining it.

The judgment is affirmed.