NOT DESIGNATED FOR PUBLICATION

No. 123,436

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL P. ESTIVO D.O.,
*Appellee*,

v.

KANSAS STATE BOARD OF HEALING ARTS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed June 17, 2022. Reversed and remanded with directions.

*Courtney E. Cyzman*, general counsel, and *Tucker L. Poling*, former general counsel, of Kansas State Board of Healing Arts, for appellant.

*Kelli J. Stevens*, of Forbes Law Group, LLC, of Overland Park, for appellee.

Before HILL, P.J., POWELL and CLINE, JJ.

PER CURIAM: The Kansas State Board of Healing Arts appeals a district court's ruling that it had no jurisdiction to discipline Michael P. Estivo D.O. because of improper notice to the doctor. The court held that since the Board had failed to specify a particular statutory subsection, its notice to Dr. Estivo was deficient. That holding was an error. The proper question was whether the licensee, Dr. Estivo, was given notice of the facts of the charges made against him so he could prepare a defense. Because Dr. Estivo was advised of the facts and could prepare a defense, we agree with the Board and

1

reverse the district court's holding that the Board lacked jurisdiction because of inadequate notice.

We also disagree with Dr. Estivo and hold that this issue is not moot because of acquiescence in the district court judgment by the Board.

*This case has an extensive administrative history.*

We need not dwell on the extensive medical concerns the Board has had with Dr. Estivo. We must focus, instead, on the legal standards and the legal questions raised by the professional disciplinary proceeding.

The Board launched a disciplinary action against Dr. Estivo, an osteopathic doctor. The Board contended that Dr. Estivo engaged in gross negligence in his postsurgical care of a patient and failed to keep an adequate medical record related to that care. The patient had presented with lower back pain and Dr. Estivo performed spinal surgery on the patient. Afterward, the patient experienced left leg weakness, became wheelchair bound, and lost bladder and bowel control. The petition alleged that Dr. Estivo "failed to adhere to the applicable standard of care to a degree constituting ordinary and/or gross negligence."

An administrative law judge from the Kansas Office of Administrative Hearings then heard four days of testimony on the matter and ruled that Dr. Estivo's conduct did not constitute gross negligence. The ALJ concluded that Dr. Estivo "at worst . . . 'failed to adhere to the standard of care' in a manner which does not rise 'to the level of professional incompetency' on a single date." The ALJ concluded that a single incident of ordinary negligence was not grounds for revoking a medical license. The ALJ ruled the proper remedy was to either enter a professional development plan, issue written recommendations, or issue a letter of concern.

2

This initial order was then reviewed de novo by the full Board.

Both sides briefed the matter for the Board. The Board requested all costs of the proceeding be assessed against Dr. Estivo. At the review hearing, Board members questioned Dr. Estivo. After examining the agency record and hearing the parties' arguments, the Board issued its final order and departed somewhat from the initial order.

The Board agreed that Dr. Estivo's conduct did not amount to gross negligence. But the Board found Dr. Estivo committed acts of unprofessional conduct under K.S.A. 65-2836(b) and K.S.A. 65-2837(b)(25) when he failed to keep accurate written medical records. That failure also violated K.S.A. 65-2836(k) and K.A.R. 100-24-1. The Board found Dr. Estivo's documentation failures occurred more than once. The Board further found Dr. Estivo committed acts of unprofessional conduct under K.S.A. 65-2836(b) and K.S.A. 65-2837(b)(24) by violating the standard of care in both his recordkeeping and his decision to not order an MRI or other imaging at any time in his postdischarge care of the patient.

The Board ordered Dr. Estivo to complete a course on medical recordkeeping (which he had completed by the date of the full Board hearing) and to pay the full costs of the action of $32,129.50 in accordance with K.S.A. 65-2846.

Dr. Estivo sought judicial review in the Shawnee County District Court. The court ordered the agency record be filed under seal. Both parties submitted briefs. Dr. Estivo challenged the Board's imposition of costs and its finding that he was negligent. After hearing arguments, the district court issued its memorandum decision and order on July 3, 2019, reversing the Board's decision in part.

The district court, without request by either party, ruled the Board had no authority to take disciplinary action against Dr. Estivo based on a violation of K.S.A. 65-

2837(b)(24) because the Board did not give him proper notice of that charge. The district court thus reversed the Board's finding that Dr. Estivo committed unprofessional conduct as defined by K.S.A. 65-2837(b)(24). That issue was not briefed, nor was it raised by the court during oral arguments. The district court also vacated the Board's assessment of costs and remanded the cost issue to the Board because the Board ignored a proportional assessment of the costs as required by K.S.A. 65-2846(a), given that the ruling was not entirely adverse to Dr. Estivo.

The Board asked the district court to stay the matter so it could seek an immediate interlocutory appeal to this court rather than first going through the remand proceeding. The court denied this request. On August 2, 2019, the Board filed a notice of appeal of the district court's July 3, 2019 order.

Subsequently, on remand from the district court, the Board reduced the assessment of costs against Dr. Estivo from $32,129.50 to $5,059.68. The Board ordered the costs be paid in full within 30 days or per an approved payment schedule. The Board approved Dr. Estivo's proposed payment plan but noted that its order should not be construed to suggest that the Board was acquiescing to the district court's July 3, 2019 order. We were informed that while this appeal was pending, Dr. Estivo had paid the amount assessed.

*The rules we must follow are well established.*

Appellate courts exercise the same statutorily limited review of an agency's action as does the district court, as though the appeal had been made directly to the appellate court. *Board of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017). Thus, under the Kansas Judicial Review Act we may grant relief only if one of the determinations in K.S.A. 77-621(c) applies:

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

4

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

The district court held that several of these provisions apply here. We disagree. We shall first address the question of notice.

*The district court erred when it ruled that the Board failed to give notice.*

A review is helpful at this point. The Board found Dr. Estivo committed acts of unprofessional conduct under K.S.A. 65-2836(b) and K.S.A. 65-2837(b)(24) by violating the standard of care in both his recordkeeping and his decision to not order an MRI or other imaging in his postdischarge care of the patient.

But the district court, without any suggestion by either party, brought up a surprise issue:

"In examining the Petition, filed in this case on February 9, 2016, there is no charge leveled against Dr. Estivo for violating K.S.A. 65-2837(b)(24). Such a charge does not appear in any pre-hearing order, at the status conference, in the initial order, in any subsequent briefs for review of the initial order, or in either of the parties' proposed findings of fact and conclusions of law. The first mention of this charge in the agency record, and a finding of a violation of K.S.A. 65-2837(b)(24), appears is in the Board's Final Order.

5

"In a 1993 case, the Kansas Supreme Court reversed an agency's findings for two violations when it reasoned that the agency improperly found the licensee, 'in certain instances, to be guilty of actions other than those for which he was charged.' *Reed v. Kan. Racing Comm'n*, 253 Kan. 602, 612, 860 P.2d 684 (1993). Here, Dr. Estivo was never charged with violating K.S.A. 65-2837(b)(24), and thus was not given proper notice of such a charge. Therefore, the Board had no authority to take disciplinary action against his license based on this charge, which appeared for the first time in the Final Order.

"The Court reverses the Board's finding that Dr. Estivo violated K.S.A. 65-2836(b) as defined by K.S.A. 65-2837(b)(24)."

Dr. Estivo did not raise this issue in his petition for judicial review. To this court, the Board contends it need not "charge" a licensee with a violation of a particular subsection of K.S.A. 65-2837(b), and that it gave Dr. Estivo sufficient notice that it was alleging Dr. Estivo violated the substance of K.S.A. 65-2837(b)(24), i.e., that he repeatedly violated the standard of care with regard to his treatment of the patient.

Dr. Estivo contends that he lacked sufficient notice to adequately prepare a defense to the claim of repeated ordinary negligence. He contends defending a claim of gross negligence is very different from defending a claim of repeated ordinary negligence.

We turn now to the question of notice—a fundamental element of due process. What notice is due here? Under the Kansas Administrative Procedure Act, "[a] state agency may not revoke, suspend, modify, annul, withdraw, refuse to renew, or amend a license unless the state agency first gives notice and an opportunity for a hearing in accordance with this act." K.S.A. 77-512. We may review whether a licensee was given sufficient notice under K.S.A. 77-512. *Reed v. Kansas Racing Commission*, 253 Kan. 602, 611-13, 860 P.2d 684 (1993).

The details are important. The notice must include "a statement of the issues involved and, to the extent known to the presiding officer, of the matters asserted by the parties." K.S.A. 77-518(c)(7). A statement with "reasonable and substantial certainty is required so as to advise a respondent of the matters charged and the relief sought." *Community of Woodston v. State Corporation Commission*, 186 Kan. 747, 753, 353 P.2d 206 (1960). The "key consideration" is whether the respondent was given sufficient notice to adequately prepare a defense. *Reed*, 253 Kan. at 612.

None of the relevant caselaw that we found requires the notice to include a citation to the precise statutory subsection that is the authority for an alleged violation. Instead, the inquiry is whether the licensee was given notice of the facts supporting the violation, so the licensee can adequately prepare a defense. In other words, the notice must advise the licensee of the alleged facts so the licensee can defend the alleged violation. "Here are the factual allegations. What is your response?"

For example, in *Reed*, the court was not concerned with whether the Kansas Racing Commission had cited a particular statutory subsection. The Commission charged a racetrack manager with a list of violations, including perjury. The Commission chair ordered that Reed be furnished with the specific allegations of perjury and that the hearing would be limited accordingly. When the Commission found Reed guilty of four instances of perjury that were not among the 11 specified in the amended hearing notice, Reed appealed. Our Supreme Court found the chair's prehearing conference order limiting the issues to be heard was "of significance" in resolving the notice issue. 253 Kan. at 610. The court held:

> "We are troubled by the fact that Reed was found, in certain instances, to be guilty of actions other than those for which he was charged. The prehearing conference order specifically limited the hearing to allegations set forth in the amended charging document. Reed could have relied upon this notice and only prepared to defend the

particular 11 instances of perjury which were specified prior to the hearing. The specificity of the perjury charges, coupled with the order requiring the hearing to be on stated allegations, created a situation where Reed lacked notice as to two of the [Commission]'s perjury findings, *i.e.,* his relationship with (1) the Idaho racing regulations and (2) the Iowa senate committee." 253 Kan. at 612-13.

The court reversed the two perjury findings for which Reed lacked notice. 253 Kan. at 613. Reed had not been advised of those two factual allegations before the hearing.

Then, again in *DeBerry v. Kansas State Board of Accountancy*, 34 Kan. App. 2d 813, 820, 124 P.3d 1067 (2005), a CPA was charged with violating K.A.R. 74-5-103(a), but the Board ultimately determined that he violated K.A.R. 74-5-103(b). Subsection (a) barred a CPA from paying a commission to a third party to obtain a client. Subsection (b) barred a CPA from accepting referral fees. This court upheld the Board's order suspending the CPA's license because he "was advised of the facts supporting the charges against him, and the facts supported a violation of K.A.R. 75-5-103(b)." 34 Kan. App. 2d at 816, 820.

In a medical license case, *Sajadi v. Kansas Board of Healing Arts*, 61 Kan. App. 2d 114, 500 P.3d 542 (2021), the Board issued a summary order finding Dr. Seyed Sajadi violated K.S.A. 65-2836(j) after the Missouri State Board of Registration for the Healing Arts took disciplinary action against him. That statute makes it a violation for a Kansas licensee to have disciplinary action taken against them by another state. Upon review by the full Board, the Board concluded that Dr. Sajadi engaged in itinerant surgery in a manner that endangered patient safety.

On appeal, Dr. Sajadi contended he was not afforded adequate notice that he would need to defend the quality of care he provided to the patient at issue. This court disagreed. The court found

- the notice was sufficient because the summary order contained a detailed summary of the facts of the Missouri incident;
- the formal notice of hearing stated that the issues to be determined included whether to take other action authorized by the Healing Arts Act arising out of the issues and circumstances described in the summary order; and
- the doctor's counsel acknowledged the Board's ability to assess and impose appropriate disciplinary action. 61 Kan. App. 2d at 123-24.

The court found Dr. Sajadi received notice which enabled him to have a meaningful hearing. 61 Kan. App. 2d at 124.

In the context of attorney discipline proceedings, our Supreme Court has made it clear that the formal complaint need not set forth the specific disciplinary rules allegedly violated. Rather, the question is whether the facts set out in the complaint put the licensee on notice concerning what ethical violations may arise from them. In other words, when the complaint alleges facts that support a rule violation not specifically referenced in the complaint, the court will consider and may find the added violation. Proper notice must be given of the basic factual situation out of which the charges might result, not of the rules themselves. *In re Hodge*, 307 Kan. 170, 226, 407 P.3d 613 (2017); *In re McDaneld*, 305 Kan. 973, 976, 389 P.3d 976 (2017).

Therefore, it is clear from a review of these cases that throughout the spectrum of administrative agencies in Kansas, the notice that is required for those subject to discipline centers on factual allegations and not on statutory citations. A person can build a defense when they are advised of the facts. They cannot do so if they are just given a statutory number.

Some of these statutes are long and complex in their structure. For example, there are 34 nonexclusive acts which constitute "unprofessional conduct" in K.S.A. 65-

9

2837(b). Some are specific, for example: "Representing to a patient that a manifestly incurable disease, condition or injury can be permanently cured." K.S.A. 65-2837(b)(2). But the subsection at issue is more general: "Repeated failure to practice healing arts with that level of care, skill and treatment that is recognized by a reasonably prudent similar practitioner as being acceptable under similar conditions and circumstances." K.S.A. 65-2837(b)(24). Failure to practice according to the standard of care is likely to be an issue in most cases. The adequacy of the notice of such violation should not depend on a citation to such subsection.

Here, unlike *in Reed*, the second amended prehearing order did not limit the hearing to a set of specific instances of wrongdoing. The Board's petition alleged that Dr. Estivo "failed to adhere to the applicable standard of care to a degree constituting ordinary and/or gross negligence" in his documentation and postoperative care of the patient. The petition outlined the surgery Dr. Estivo performed on the patient and the three follow-up visits that were the subject of the hearing:

> "8.      On or about October 9, 2012, Patient 1 underwent the scheduled procedure. The procedure lasted approximately four (4) hours.
> "9.      On or about October 10, 2012, Licensee's procedure report was dictated. Licensee's procedure report documents a complication regarding a lateral plate that was placed through the direct lateral approach. Further, Licensee noted that Patient l's 'body habitus and degree osteoporosis during the lateral portion of the procedure was significantly longer than usual . . . with respect to the lateral approach and the anterior aspect of the fusion surgery, she is at risk increased above the average person for . . . complications.' No other complications or difficulties were noted by Licensee in his procedure report.
> "10.      Nursing notes and physical therapy notes following Patient l's procedure document Patient 1 was unable to bear weight on her left leg, was unable to move her left leg, and had decreased sensation in her left leg.
> 11.      In a progress note with a service date of October 10, 2012, and dictated by Licensee on or about that same day, Licensee documented Patient 1 was 'demonstrating

10

left leg weakness.' Licensee further documented '[Patient 1] had been cautioned that nerve injury can occur with this surgery giving either leg numbness, tingling, or weakening especially the Left leg along with the possibility of injury to Bowel and or Bladder nerves which can be permanent or temporary.'

"12.     A discharge summary was dictated by Licensee on or about that same day. In the discharge summary, Licensee states that 'there was no progressive neurological loss, however, her left leg is very weak.' No actual neurological exam was documented by Licensee post-operatively.

"13.     On or about October 19, 2012, Licensee saw Patient 1 for a follow-up after her hospitalization for spine surgery. Licensee failed to discuss or document how Patient 1 was doing post-operatively. Licensee's musculoskeletal review of Patient 1 only documented Patient l's quadriceps function and failed to document function of Patient l's hip flexors, dorsiflexion, or plantar flexion. Further, Licensee documents Patient 1 having '[status post] surgery with good resolution of symptoms' and 'urine retention, being treated at the Rehab hospital.' Licensee scheduled Patient for a recheck in one (1) week for suture removal.

"14.     On or about October 26, 2012, Licensee saw Patient 1 for another follow-up after her hospitalization for spine surgery. Licensee failed to document a left lower extremity neurological exam of Patient 1. Further, there was no documented discussion of the complication that occurred during Patient l's procedure and no discussion of a plan for evaluation or expectation for recovery.

"15.     Subsequent to Licensee's surgical intervention, Patient 1 continued to have ongoing pain issues and left leg paralysis which was non-weight bearing. As a result, Patient 1 was wheelchair bound and had an inability to void and had stool retention."

These are factual allegations that gave Dr. Estivo notice of what was at stake. He could build a defense on these allegations.

The petition alleged that Dr. Estivo's conduct constituted violations of the Kansas Healing Arts Act, including:

"Licensee has violated K.S.A. 65-2836(b) in that Licensee committed an act or acts of unprofessional and/or dishonorable conduct or professional incompetency, that if

11

continued would reasonably be expected to constitute an inability to practice the healing arts with reasonable skill and safety to patients or unprofessional conduct as defined by K.S.A. 65-2837, and amendments thereto."

In its proposed findings of fact and conclusions of law, the Board asked the ALJ to find that Dr. Estivo "repeatedly failed to adhere to the applicable standard of care to a degree constituting gross negligence" or that Dr. Estivo "repeatedly failed to adhere to the applicable standard of care to a degree constituting ordinary negligence" because, among other things, Dr. Estivo failed to perform an MRI, CT, or EMG.

Here, the petition specifically alleged both gross and ordinary negligence. Dr. Estivo had notice to prepare a defense to a charge of ordinary negligence. And the petition outlined the basic factual allegations supporting the charges. The district court erred by reversing the Board's finding based solely on the petition's failure to identify subsection (b)(24) as the statutory authority for the violation. The numbers of the statute are not as important as the allegations of facts made against Dr. Estivo.

The district court erred when it ruled that the Board did not have jurisdiction to do what it did based upon inadequate notice. There was legally sufficient notice given to Dr. Estivo in this case and the Board had jurisdiction to act as it did.

*Did the Board acquiesce in the district court's judgment?*

Dr. Estivo contends the Board acquiesced in the district court's ruling by voluntarily accepting his payment of the redetermined amount of costs. The Board contends it did not acquiesce because the district court required the Board to conduct a remand proceeding before it appealed the district court's decision, and the Board also noted in its orders that it was not acquiescing or waiving its appeal right.

12

Because this issue involves jurisdiction, whether a party acquiesced in a judgment is a question of law subject to unlimited review. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006); *Security Bank of Kansas City v. Tripwire Operations Group*, 55 Kan. App. 2d 295, 299-300, 412 P.3d 1030 (2018).

Generally, acquiescence in a judgment—which cuts off the right of appellate review—occurs when a party voluntarily complies with a judgment by assuming the burdens or accepting the benefits of the judgment contested on appeal. A party that voluntarily complies with a judgment should not be permitted to pursue an inconsistent position by appealing from that judgment. *Pastine*, 281 Kan. at 1271; *Heartland Presbytery v. Presbyterian Church of Stanley, Inc.*, 53 Kan. App. 2d 622, 635, 390 P.3d 581 (2017).

Whether such compliance is voluntary depends on the facts of the particular case, and the issue is whether there was intent to waive legal rights. *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 497, 866 P.2d 1044 (1994); *Security Bank of Kansas City*, 55 Kan. App. 2d at 300. The question becomes, did the Board acquiesce by complying with the district court's remand order?

Compliance with a court order imposed over a party's objection does not constitute acquiescence. See *Harsch v. Miller*, 288 Kan. 280, 292, 200 P.3d 467 (2009). "A party need not risk contempt of court to avoid an accusation of acquiescence." *In re Metcalf Associates-2000*, 42 Kan. App. 2d 412, 423-24, 213 P.3d 751 (2009).

In our view, the Board has not acquiesced in the district court's judgment about costs. The Board was required by the district court to conduct a remand proceeding to determine costs.

13

We note though that the Board did not have to demand immediate payment from Dr. Estivo. The Board set the terms of payment on remand. It was the Board's own order that required Dr. Estivo to pay the reassessed costs within 30 days of its order, or through an approved payment plan. The Board then voluntarily approved Dr. Estivo's payment plan which required him to make five monthly payments while the Board's appeal of the district court's judgment was still pending. The Board could have simply stayed its order until after this appeal was decided. The Board had granted such a stay of the final order pending a review by the district court.

Also, just because the Board stated it was reserving its right to appeal is of no consequence. A party can acquiesce in a judgment despite written protest that the party does not concede the correctness of judgment and reserves the right to appeal. *Huet-Vaughn v. Kansas State Board of Healing Arts*, 267 Kan. 144, 146-48, 978 P.2d 896 (1999). "Neither the statement of an intent not to waive the right to appeal nor an agreement between the parties to an action that the right to appeal is not waived can invest an appellate court with jurisdiction to determine issues where jurisdiction is otherwise lacking."*Labette Community College v. Board of County Commissioners*, 258 Kan. 622, Syl. ¶ 3, 907 P.2d 127 (1995).

For example, if a party makes a partial payment on a judgment while expressly reserving the right to appeal, the party has acquiesced in the judgment if the partial payment is part of the amount contested on appeal. *Varner*, 254 Kan. at 495-97.

But we note that Dr. Estivo is not cross-appealing that he owed the $5,059.68 in costs he has already paid. Thus, the Board's acceptance of the payment is not inconsistent with its position on appeal.

14

Some cases hold it is inconsistent to accept partial payment on a judgment when all or part of it may have to be paid back upon the outcome of the appeal. *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, 733, 206 P.3d 1 (2009).

But "'there is no acquiescence when the issues on appeal cannot affect the payments made or burdens assumed and such payment or burden is not involved in the issues on appeal.'" *Richardson v. Murray*, 54 Kan. App. 2d 571, 586, 402 P.3d 588 (2017). In other words, any party to an appeal who accepts payment of a judgment shall not be found to have acquiesced in the judgment so long as the issues on appeal do not affect the right to receive such portion of the judgment. The payment of costs in the trial court by the appellant "when the assessment and amount of such costs cannot be affected by the decision on appeal," does not constitute such an acquiescence in the judgment. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 231, 597 P.2d 1080 (1979).

When we deal with court costs, the payment "of the costs of any action in any court" is not an acquiescence in a judgment or any order of the court that prevents an appeal by the party paying such costs. K.S.A. 60-2004; *Huet-Vaughn*, 267 Kan. at 149; *Vap v. Diamond Oil Producers, Inc.*, 9 Kan. App. 2d 58, 60, 671 P.2d 1126 (1983). But the costs assessed here were for an administrative proceeding, not a court hearing, and the appellant is the Board.

We are not concerned with implications here. "Since implied waivers aren't favored, acquiescence should be found only when the party's actions '"clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary, and absolute acquiescence."'" *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 17, 287 P.3d 287 (2012). We are not sure that the Board has absolutely acquiesced in the court's judgment.

15

Given that Dr. Estivo would owe at least the amount he has already paid, regardless of the outcome of this appeal, we find that the Board has not acquiesced in this case by accepting his payments.

Because we must reverse the district court on its ruling concerning lack of sufficient notice, we need not address the rest of the issues.

Reversed and remanded with directions to enter judgment for the Board.

16